(Slip Opinion)            OCTOBER  TERM,  2011                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HALL ET UX. *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–875.   Argued November 29, 2011—Decided May 14, 2012

Chapter 12 of the Bankruptcy Code allows farmer debtors with regular annual income to adjust their debts subject to a reorganization plan. The plan must provide for full payment of priority claims. 11 U. S. C. §1222(a)(2).   Under §1222(a)(2)(A), however, certain governmental claims arising from the disposition of farm assets are stripped of priority status and downgraded to general, unsecured claims that are dischargeable after less than full payment.   That exception applies only to claims "entitled to priority under [11 U. S. C. §507]" in the first place.   As relevant here, §507(a)(2) covers "administrative expenses allowed under §503(b)," which includes "any tax . . . incurred by the estate." §503(b)(B)(i).

Petitioners filed for Chapter 12 bankruptcy and then sold their farm.  They proposed a plan under which they would pay off outstanding liabilities with proceeds from the sale.  The Internal Revenue Service (IRS) objected, asserting a tax on the capital gains from the sale.  Petitioners then proposed treating the tax as an unsecured claim to be paid to the extent funds were available, with the unpaid balance being discharged.  The Bankruptcy Court sustained an IRS objection, the District Court reversed, and the Ninth Circuit reversed the District Court.  The Ninth Circuit held that because a Chapter 12 estate is not a separate taxable entity under the Internal Revenue Code (IRC), 26 U. S. C. §§1398, 1399, it does not "incur" postpetition federal income taxes.  The Ninth Circuit concluded that because the tax was not "incurred by the estate" under §503(b), it was not a priority claim eligible for the §1222(a)(2)(A) exception.

*Held:* The federal income tax liability resulting from petitioners' postpetition farm sale is not "incurred by the estate" under §503(b) of the Bankruptcy Code and thus is neither collectible nor dischargeable in

the Chapter 12 plan.  Pp. 4–17.

(a) The phrase "incurred by the estate" bears a plain and natural reading.  A tax "incurred by the estate" is a tax for which the estate itself is liable.  Only certain estates are liable for federal income taxes.  IRC §§1398 and 1399 define the division of responsibilities for the payment of taxes between the estate and the debtor on a chapter-by-chapter basis.  Under those provisions, a Chapter 12 estate is not a separately taxable entity.  The debtor—not the trustee—is generally liable for taxes and files the only tax return.  The postpetition income taxes are thus not "incurred by the estate."  Pp. 4–5.

(b) Section 346 of the Bankruptcy Code and its longstanding interplay with IRC §§1398 and 1399 reinforce that whether an estate "incurs" taxes turns on Congress' chapter-specific guidance on which estates are separately taxable.  The original §346 established that state or local income taxes could be imposed only on the estate in an individual-debtor Chapter 7 or 11 bankruptcy, and only on the debtor in a Chapter 13 bankruptcy.  Congress applied the framework of §346 to federal taxes two years later: IRC §1398 and 1399 established that the estate is separately taxable in individual-debtor Chapter 7 or 11 cases, and not separately taxable in Chapter 13 (and now Chapter 12) cases.  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 subsequently amended §346, expressly aligning its assignment of state or local taxes with the IRC separate taxable entity rules for federal taxes.  This Court assumes that Congress is aware of existing law when it passes legislation, and the existing law at the enactment of §1222(a)(2)(A) indicated that an estate's liability for taxes turned on separate taxable entity rules.  Pp. 6–9.

(c) Chapter 13, on which Chapter 12 was modeled, further bolsters this Court's holding.  Established understandings hold that postpetition income taxes are not "incurred by the [Chapter 13] estate" under §503(b) because they are the liability of the Chapter 13 debtor alone.  The Government has also long hewed to this position.  Section 1305(a)(1), which gives holders of postpetition claims the option of collecting postpetition taxes within the bankruptcy case, would be superfluous if postpetition tax liabilities were automatically collectible inside the bankruptcy.  It is thus clear that postpetition income taxes are not automatically collectible in a Chapter 13 plan and are not administrative expenses under §503(b).  To hold otherwise in Chapter 12 would disrupt settled practices in Chapter 13 cases.  Pp. 9–12.

(d) None of the contrary arguments by petitioners and the dissent overcomes the statute's plain language, context, and structure.  There is no textual basis for giving "incurred by the estate" a temporal meaning, such that it refers to all taxes "incurred postpetition."

Nor does the text support deeming a tax "incurred by the estate" whenever it is paid by the debtor out of property of the estate. Section 503's legislative history is not inconsistent with this Court's holding, and the Court has cautioned against allowing ambiguous legislative history to muddy clear statutory language. See *Milner* v. *Department of Navy*, 562 U. S. ___, ___. Meanwhile, any cases suggesting that postpetition taxes were treated as administrative expenses are inapposite because they involve corporate debtors, which Congress has singled out for responsibilities paralleling those borne by a separate taxable entity's trustee. Finally, petitioners contend that the purpose of §1222(a)(2)(A) was to provide debtors with robust relief from tax debts. There may be compelling policy reasons for treating postpetition income tax liabilities as dischargeable. But if Congress intended petitioners' result, it did not so provide in the statute. Pp. 12−17.

617 F. 3d 1161, affirmed.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, THOMAS, and ALITO, JJ., joined. BREYER, J., filed a dissenting opinion, in which KENNEDY, GINSBURG, and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 10–875

————

## LYNWOOD D. HALL, ET UX., PETITIONERS *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 14, 2012]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Under Chapter 12 of the Bankruptcy Code, farmer debtors may treat certain claims owed to a governmental unit resulting from the disposition of farm assets as dischargeable, unsecured liabilities. 11 U. S. C. §1222(a)(2)(A). One such claim is for "any tax . . . incurred by the estate." §503(b)(B)(i). The question presented is whether a federal income tax liability resulting from individual debtors' sale of a farm during the pendency of a Chapter 12 bankruptcy is "incurred by the estate" and thus dischargeable. We hold that it is not.

## I

### A

In 1986, Congress enacted Chapter 12 of the Bankruptcy Code, §1201 *et seq.*, to allow farmer debtors with regular annual income to adjust their debts. Chapter 12 was modeled on Chapter 13, §1301 *et seq.*, which permits individual debtors with regular annual income to preserve existing assets subject to a "court-approved plan under which they pay creditors out of their future income." *Hamilton* v. *Lanning*, 560 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 1).

Chapter 12 debtors similarly file a plan of reorganization. §1221.  To be confirmed, the plan must provide for the full payment of priority claims.  §1222(a)(2).

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), §1003, 119 Stat. 186, Congress created an exception to that requirement:

> "**Contents of plan**
> "(a) The plan shall—
>
>   .         .         .         .         .
>
>   "(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless—
>
>   "(A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge."  11 U. S. C. §1222.

Under §1222(a)(2)(A), certain governmental claims resulting from the disposition of farm assets are downgraded to general, unsecured claims that are dischargeable after less than full payment.  See §1228(a).  The claims are stripped of their priority status.

That exception, however, applies only to claims in the plan that are "entitled to priority under section 507" in the first place.  Section 507 lists 10 categories of such claims. Two pertain to taxes: One category, §507(a)(8), covers prepetition taxes, and is inapplicable in this case.  The other, §507(a)(2), covers "administrative expenses allowed under section 503(b)," which in turn includes "any tax . . . incurred by the estate."  §503(b)(B)(i).  Thus, for postpetition taxes to be entitled to priority under §507 and eligible for the §1222(a)(2)(A) exception, the taxes must be "in-

curred by the estate."

## B

Petitioners Lynwood and Brenda Hall petitioned for bankruptcy under Chapter 12 and sold their farm shortly thereafter. Petitioners initially proposed a plan of reorganization under which they would pay off outstanding liabilities with proceeds from the sale. The Internal Revenue Service (IRS) objected, asserting a federal income tax of $29,000 on the capital gains from the farm sale.

Petitioners amended their proposal to treat the income tax as a general, unsecured claim to be paid to the extent funds were available, with the unpaid balance discharged. Again the IRS objected. Taxes on income from a postpetition farm sale, the IRS argued, remain the debtors' independent responsibility because they are neither collectible nor dischargeable in bankruptcy.

The Bankruptcy Court sustained the objection. The court reasoned that because a Chapter 12 estate is not a separate taxable entity under the Internal Revenue Code (IRC), see 26 U. S. C. §§1398, 1399, it cannot "incur" taxes for purposes of 11 U. S. C. §503(b).

The District Court reversed, expressing doubt that IRC provisions are relevant to interpreting §503(b). Based on its reading of legislative history, the District Court determined that Congress intended §1222(a)(2)(A) to extend to petitioners' postpetition taxes.

The Court of Appeals for the Ninth Circuit reversed. 617 F. 3d 1161 (2010). The Court of Appeals held that the Chapter 12 estate does not "incur" the postpetition federal income taxes for purposes of §503(b) because it is not a separate taxable entity under the IRC, and noted that Congress repeatedly has indicated the relevance of the IRC's taxable entity provisions to the Bankruptcy Code. Although "sympathetic" to the view that the postpetition tax liabilities should be dischargeable, the Court of Ap-

peals held that "the operative language simply failed to make its way into the statute." *Id.,* at 1167. The Court of Appeals concluded that because the taxes do not qualify under §503(b), they are not priority claims in the plan eligible for the §1222(a)(2)(A) exception.

Judge Paez dissented, siding with a sister Circuit that had concluded that Congress intended §1222(a)(2)(A) to extend to such postpetition federal income taxes. We granted certiorari to resolve the split of authority.[1] 564 U. S. ___ (2011).

## II

### A

Our resolution of this case turns on the meaning of a phrase in §503(b) of the Bankruptcy Code: "incurred by the estate." The parties agree that §1222(a)(2)(A) applies only to priority claims collectible in the bankruptcy plan and that postpetition federal income taxes so qualify only if they constitute a "tax . . . incurred by the estate." §503(b)(B)(i).

The phrase "incurred by the estate" bears a plain and natural reading. See *FCC* v. *AT&T Inc.*, 562 U. S. ___, ___ (2011) (slip op., at 5) ("When a statute does not define a term, we typically 'give the phrase its ordinary meaning'"). To "incur," one must "suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 836 (9th ed. 2009); see also Webster's Third New International Dictionary 1146 (1976) ("to . . . become liable or subject to: bring down upon oneself"); Random House Dictionary 722 (1966) ("to become liable or subject to through one's own action; bring upon oneself"). A tax "incurred by the estate" is a tax for which the estate itself is liable.

---

[1] Compare *In re Dawes*, 652 F. 3d 1236 (CA10 2011), and 617 F. 3d 1161 (CA9 2010) (case below), with *Knudsen* v. *IRS*, 581 F. 3d 696 (CA8 2009) (postpetition federal taxes are eligible for the §1222(a)(2)(A) exception and thus dischargeable).

As the IRC makes clear, only certain estates are liable for federal income taxes. Title 26 U. S. C. §§1398 and 1399 address taxation in bankruptcy and define the division of responsibilities for the payment of taxes between the estate and the debtor on a chapter-by-chapter basis. Section 1398 provides that when an individual debtor files for Chapter 7 or 11 bankruptcy, the estate shall be liable for taxes. In such cases, the trustee files a separate return on the estate's behalf and "[t]he tax" on "the taxable income of the estate . . . shall be paid by the trustee." §1398(c)(1); see also §6012(b)(4) ("Returns of . . . an estate of an individual under chapter 7 or 11 . . . shall be made by the fiduciary thereof"). Section 1399 provides that "[e]xcept in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a [bankruptcy] case." In Chapter 12 and 13 cases, then, there is no separately taxable estate. The debtor—not the trustee—is generally liable for taxes and files the only tax return. See *In re Lindsey*, 142 B. R. 447, 448 (Bkrtcy. Ct. WD Okla. 1992) ("It is clear that, pursuant to 26 U. S. C. §1398 and 1399, the standing Chapter 12 trustee neither files a return nor pays federal income tax"); cf. *infra*, at 15 (discussing special trustee duties in corporate-debtor cases).

These provisions suffice to resolve this case: Chapter 12 estates are not taxable entities. Petitioners, not the estate itself, are required to file the tax return and are liable for the taxes resulting from their postpetition farm sale. The postpetition federal income tax liability is not "incurred by the estate" and thus is neither collectible nor dischargeable in the Chapter 12 plan.[2]

--------

[2] Because we hold that the postpetition federal income taxes at issue are not collectible in the plan because they are not "incurred by the estate," we need not address the Government's broader alternative argument that Chapter 12 plans are exclusively limited to prepetition claims.

B

Our reading of "incurred by the estate" as informed by the IRC's separate taxable entity rules draws support from a related provision of the Bankruptcy Code, 11 U. S. C. §346, and its longstanding interplay with 26 U. S. C. §§1398 and 1399. That relationship illustrates that from the inception of the current Bankruptcy Code, Congress has specified on a chapter-by-chapter basis which estates are separately taxable and therefore liable for taxes. That relationship also refutes the dissent's suggestion that applying such rules is an incongruous importation of "*tax* law" unconnected to "bankruptcy principles (as Congress understood them)." *Post*, at 8–9 (opinion of BREYER, J.). And it reinforces the reasonableness of our view that whether an estate "incurs" taxes under §503(b) turns on such chapter-by-chapter distinctions.

In the original Bankruptcy Code, Congress included a provision, §346, that set out a chapter-specific division of tax liabilities between the estate and the debtor. Bankruptcy Reform Act of 1978, 92 Stat. 2565. Section 346(b)(1) provided that in an individual-debtor Chapter 7 or 11 bankruptcy, "any income of the estate may be taxed under a State or local law imposing a tax . . . *only to the estate*, and may not be taxed to *such individual*." 92 Stat. 2565 (emphasis added); see also 11 Collier on Bankruptcy ¶TX12.03[5][b][i], p. TX12–21 (16th ed. 2011) (hereinafter Collier) (§346(b) "provided that in a case under chapter 7 [or] 11 . . . the estate of an individual is a taxable entity"). Section 346(d) provided, meanwhile, that in a Chapter 13 bankruptcy, "any income of the estate or the debtor may be taxed under a State or local law imposing a tax . . . *only to the debtor*, and may not be taxed to *the estate*." 92 Stat. 2566 (emphasis added). Congress thus established that the estate in an individual-debtor Chapter 7 or 11 bankruptcy is a separate taxable entity; the estate in a Chapter

13 bankruptcy is not.[3]

Although §346 concerned state or local taxes,[4] Congress applied its framework to federal taxes two years later. In the Bankruptcy Tax Act of 1980, 94 Stat. 3397, Congress enacted 26 U. S. C. §§1398 and 1399. Section 1398 of the IRC, much like §346(b) in the Bankruptcy Code, established that the estate is separately taxable in individual-debtor Chapter 7 or 11 cases. Section 1399 of the IRC, much like §346(d) in the Bankruptcy Code, clarified that

—————

[3] For those of us for whom it is relevant, the legislative history confirms that Congress viewed §346 as defining which estates were separate taxable entities. See H. R. Rep. No. 95–595, p. 275 (1977) (hereinafter H. R. Rep.) ("A threshold issue to be considered when a debtor files a petition under title 11 is whether the estate created . . . should be treated as a separate taxable entity"); *id.*, at 334 ("Subsection (d) indicates that the estate in a chapter 13 case is not a separate taxable entity"); accord, S. Rep. No. 95–989, p. 45 (1978) (hereinafter S. Rep.); H. R. Rep., at 335 (noting "the creation of the estate of an individual under chapters 7 or 11 of title 11 as a separate taxable entity"); accord, S. Rep., at 46.

The Reports also tie separate taxable entity status to the responsibility to file returns and pay taxes. See H. R. Rep., at 277 ("If the estate is a separate taxable entity, then the representative of the estate is responsible for filing any income tax returns and paying any taxes due by the estate"); *id.,* at 278 ("When the estate is not a separate taxable entity, then taxation of the debtor should be conducted on the same basis as if no petition were filed").

[4] A dispute over Committee jurisdiction led to the insertion of "State or local" before each mention of "law imposing a tax." Compare H. R. 8200, 95th Cong., 1st Sess., §346 (1977), with §346, 92 Stat. 2565. Nonetheless, the House Report underscored that the policy behind §346 applied equally to federal taxes:

"[T]here is a strong bankruptcy policy that these provisions apply equally to Federal, State, and local taxes. However, in order to avoid any possible jurisdictional conflict with the Ways and Means Committee over the applicability of these provisions to Federal taxes, H. R. 8200 has been amended to make the sections inapplicable to Federal taxes. The amendment . . . will obviate the need for a sequential referral of the bill to Ways and Means, which will be considering these provisions and other bankruptcy-related tax law later in this Congress." H. R. Rep., at 275.

the estate is not separately taxable in Chapter 13 (and
now Chapter 12) cases.

In 2005, Congress in BAPCPA amended §346 and crys-
tallized the connection between the Bankruptcy Code and
the IRC. Section 346 now expressly aligns its assignment
of state or local taxes with the rules for federal taxes,
providing in relevant part:

> "(a) Whenever the Internal Revenue Code of 1986
> provides that a separate taxable estate or entity is
> created in a case concerning a debtor under this title,
> and the income . . . of such estate shall be taxed to or
> claimed by the estate, a separate taxable estate is also
> created for purposes of any State and local law impos-
> ing a tax on or measured by income and such income
> . . . shall be taxed to or claimed by *the estate* and may
> not be taxed to or claimed by *the debtor*.

> "(b) Whenever the Internal Revenue Code of 1986
> provides that no separate taxable estate shall be cre-
> ated in a case concerning a debtor under this title,
> and the income . . . of an estate shall be taxed to or
> claimed by the debtor, such income . . . shall be taxed
> to or claimed by *the debtor* under a State or local law
> imposing a tax on or measured by income and may not
> be taxed to or claimed by *the estate*." (Emphasis added.)

Thus, whenever the estate is separately taxable under
federal income tax law, that "is also" the case under state
or local income tax law, §346(a), and vice versa, §346(b).
And given that the Bankruptcy Code instructs that the as-
signment of state or local tax liabilities shall turn on the
IRC's separate taxable entity rules, there is parity in
turning to such rules in assigning federal tax liabilities.

In the same Act, Congress added §1222(a)(2)(A). Section
1222(a)(2)(A) carves out an exception to the ordinary
priority classification scheme. But §1222(a)(2)(A) did not
purport to redefine which claims are otherwise entitled to

priority, much less alter the underlying division of tax liability between the estate and the debtor in Chapter 12 cases. "We assume that Congress is aware of existing law when it passes legislation," *Miles* v. *Apex Marine Corp.*, 498 U. S. 19, 32 (1990), and the existing law at the enactment of §1222(a)(2)(A) indicated that an estate's liability for taxes turned on chapter-by-chapter separate taxable entity rules.

## C

The statutory structure further reinforces our holding that petitioners' postpetition income taxes are not "incurred by the estate." As a leading bankruptcy treatise and lower courts recognize, "[b]ecause chapter 12 was modeled on chapter 13, and because so many of the provisions are identical, chapter 13 cases construing provisions corresponding to chapter 12 provisions may be relied on as authority in chapter 12 cases." 8 Collier ¶1200.01[5], at 1200–10; *In re Lopez*, 372 B. R. 40, 45, n. 13 (Bkrtcy. App. Panel CA9 2007); *Justice* v. *Valley Nat. Bank*, 849 F. 2d 1078, 1083 (CA8 1988). We agree. Section 1322(a)(2), like §1222(a)(2), requires full payment of "all claims entitled to priority under section 507" under the plan. Both provisions cross-reference the same section of the Code, §507, and in turn, the same subsection, §503(b). Both are treated alike by IRC §§1398 and 1399. Whether postpetition taxes qualify under §503(b) in Chapter 13 thus sheds light on whether they so qualify in petitioners' Chapter 12 case.

Bankruptcy courts and commentators have reasoned that postpetition income taxes are not "incurred by the estate" under §503(b) because "a tax on postpetition income of the debtor or of the chapter 13 estate is not a liability of the chapter 13 estate; it is a liability of the debtor alone." 8 Collier ¶1305.02[1], at 1305–5 and 1305–

6.[5]  For over a decade, the Government has likewise hewed
to the position that "since post-petition tax liabilities are,
in Chapter 13 cases, incurred by the debtor, rather than
the bankruptcy estate, characterizing such liabilities as
administrative expenses is inconsistent with section 503."
IRS Chief Counsel Advice No. 200113027, p. 6 (Mar. 30,
2001), 2001 WL 307746, *4; see also Internal Revenue
Manual §5.9.10.9.2(3) (2006) (hereinafter IRM); IRS Liti-
gation Guideline Memorandum GL–26, p. 9 (Dec. 16,
1996), 1996 WL 33107107, *6.  We see no reason to depart
from those established understandings.  To "'hold the
Chapter 13 estate liable for [a] tax when it does not exist
as a taxable entity defies common sense as well as Con-
gress' intent.'" *In re Whall*, 391 B. R. 1, 4 (Bkrtcy. Ct.
Mass. 2008).  The same holds true for a Chapter 12 estate.

   A provision in Chapter 13 confirms that postpetition
income taxes fall outside §503(b).  Section 1305(a)(1) pro-
vides that "[a] proof of claim *may* be filed by any entity
that holds a claim against the debtor . . . for taxes that
become payable to a governmental unit while the case is
pending." (Emphasis added.)  That provision gives holders
of postpetition claims the option of collecting postpetition
taxes within the bankruptcy case—an option that the
Government would never need to invoke if postpetition tax
liabilities were already collectible inside the bankruptcy.
Accordingly, lest we render §1305 "'inoperative or super-
fluous,'" *Hibbs* v. *Winn*, 542 U. S. 88, 101 (2004), it is clear
that postpetition income taxes are not automatically col-
lectible in a Chapter 13 plan and, *a fortiori*, are not admin-
istrative expenses under §503(b).

   It follows that postpetition income taxes are not auto-

———————
   [5]See, *e.g., In re Maxfield*, No. 04–60355, 2009 WL 2105953, *5–*6
(Bkrtcy. Ct. ND Ind. 2009); *In re Jagours*, 236 B. R. 616, 620 (Bkrtcy.
Ct. ED Tex. 1999); *In re Whall*, 391 B. R. 1, 5–6 (Bkrtcy. Ct. Mass.
2008); *In re Brown*, No. 05–41071, 2006 WL 3370867, *3 (Bkrtcy. Ct.
Mass. 2006); *In re Gyulafia*, 65 B. R. 913, 916 (Bkrtcy. Ct. Kan. 1986).

matically collectible in petitioners' Chapter 12 plan.[6] Because both chapters cross-reference §503(b) in an identical manner, see §§1222(a)(2), 1322(a)(2), we are cognizant that any conflicting reading of §503(b) here could disrupt settled Chapter 13 practices. See *Cohen* v. *de la Cruz*, 523 U. S. 213, 221 (1998) (the Court "'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure'"). Chapter 13 filings outnumber Chapter 12 filings six-hundred-fold. See U. S. Bankruptcy Courts—Cases Commenced During the 12-Month Period Ending September 30, 2011 (Table F–2), http://www.uscourts.gov/Statistics/BankruptcyStatistics.aspx (estimating 676 and

——————

[6] The dissent suggests that Chapter 12 can be distinguished from Chapter 13 because Chapter 12 bankruptcies tend to be longer, such that the treatment of taxes is more "important." *Post,* at 13. As a practical matter, it is not clear that Chapter 12 bankruptcies are substantially longer. Compare Brief for Neil E. Harl. et al. as *Amici Curiae* 33 (median Chapter 12 case duration is under 8 months) with Tr. of Oral Arg. 49 ("on average we're talking about 4 months in a chapter 13 case"). In any event, there is no indication that Congress intended any difference in duration—if it anticipated a difference at all—to flip the characterization of postpetition income taxes from one chapter to the other. Nor does the absence of a §1305 equivalent in Chapter 12 justify shoehorning postpetition taxes into §503(b), as the dissent argues. That Chapter 12 lacks a provision allowing such taxes to be brought inside the plan only clarifies that such taxes fall outside of the plan.

The dissent alternatively suggests that it "do[es] not see the serious harm in treating the relevant taxes as 'administrative expenses' in *both* Chapter 12 and Chapter 13 cases." *Post,* at 13–14. The "harm" is to settled understandings in Chapter 13 to the contrary. The "harm" is also to §1305; to avoid rendering §1305 a nullity, the dissent recasts the provision as applicable not to all "taxes that become payable . . . while the case is pending," but only those payable "*after* the Chapter 13 Plan is confirmed." *Post,* at 14. The dissent does not claim, however, that this was Congress' intent for §1305, as Congress' choice of words would be exceedingly overbroad if it were. And the dissent's novel reading contravenes ample Chapter 13 authority recognizing no such limitation on §1305's scope. *E.g.,* 8 Collier ¶1305.02 (citing cases).

417,503 annual Chapter 12 and 13 filings, respectively)
(as visited May 14, 2012, and available in Clerk of Court's
case file). Yet adopting petitioners' reading of §503(b)
would mean that, in every Chapter 13 case, the Govern-
ment could ignore §1305 and expect priority payment of
postpetition income taxes in every plan.

At bottom, "identical words and phrases within the
same statute should normally be given the same mean-
ing." *Powerex Corp.* v. *Reliant Energy Services, Inc.*, 551
U. S. 224, 232 (2007). Absent any indication that Con-
gress intended a conflict between two closely related chap-
ters, we decline to create one.[7]

### III

Petitioners and the dissent advance several arguments
for why the postpetition income taxes at issue should be
considered "incurred by the estate," notwithstanding the
IRC's separate taxable entity rules. But none provides
sufficient reason to overcome the statute's plain language,
context, and structure.

Petitioners primarily argue that "incurred by the estate"
has a temporal meaning. Petitioners emphasize that the
estate only comes into existence after a bankruptcy peti-
tion is filed. Thus, they reason, taxes "incurred by the
estate" refers to all taxes "incurred postpetition," regard-
less of whether the estate is liable for the tax and regard-
less of the chapter under which a case is filed. Although
all taxes "incurred by the estate" are necessarily incurred

---

[7] IRS manuals dating back to 1998 indicate that the Government did
not view postpetition federal income taxes as collectible in an individ-
ual debtor's Chapter 12 plan, even when that view was adverse to its
interests. See IRM §25.17.12.9.3 (2004); *id.*, §25.17.12.9.3(1) (2002);
*id.*, §5.9, ch. 10.8(4) (1999); *id.*, §5.9, ch. 10.8(4) (1998). Until the en-
actment of 11 U. S. C. §1222(a)(2)(A), treating such taxes as priority
claims in the plan would have assured the Government of full payment
before or at the time of the plan.

postpetition, not all taxes incurred postpetition are "incurred by the estate." That an estate cannot incur liability until it exists does not mean that every liability that arises after that point automatically becomes the estate's liability. And there is no textual basis to focus on *when* the liability is incurred, as opposed to whether the liability is incurred *"by* the estate."

Alternately, petitioners contend that a tax should be considered "incurred by the estate" so long as it is payable out of estate assets. Income from postpetition sales of farm assets is considered property of the estate. See §1207(a). Petitioners argue that even if the debtor—and not the estate—is liable for a tax, the tax is still "incurred by the estate" because the funds the debtor uses to pay the tax are property of the estate. But that too strains the text beyond what it can bear. To concede that someone other than the estate is liable for filing the return and paying the tax, and yet maintain that the estate is the one that has "incurred" the tax, defies the ordinary meaning of "incur" as bringing a liability upon oneself.

The dissent, echoing both of these points, urges that we "simply . . . consider the debtor and estate as *merged.*" *Post,* at 11. "The English language," the dissent reasons, "permits this reading" and "do[es] not require" our reading. *Post,* at 8–9. But any reading of "tax . . . incurred *by the estate*" that is contingent on merging the debtor and estate—despite Congress' longstanding efforts to *distinguish* between when tax liabilities are borne by the debtor or borne by the estate—is not a natural construction of the statute as written.

Moreover, these alternative readings create a conflict between §503(b) and §346(b). Petitioners consider postpetition state or local income taxes, like federal income taxes, to be "incurred by the estate" under §503(b). See Tr. of Oral Arg. 4–5. But §346(b) requires that such taxes be borne by the Chapter 12 debtor, not the estate. It is

implausible to maintain that taxes are "incurred by the estate" when §346(b) specifically prohibits such taxes from being "taxed to or claimed by the estate."

To buttress their counterintuitive readings of the text, petitioners and the dissent suggest that there is a long history of treating postpetition taxes as administrative expenses entitled to priority. Both point to two legislative Reports accompanying the 1978 enactment of §503. But neither snippet from which they quote is inconsistent with today's holding,[8] and we have cautioned against "allowing ambiguous legislative history to muddy clear statutory language." *Milner* v. *Department of Navy*, 562 U. S. ___, ___ (2011) (slip op., at 9).

Petitioners also point to cases suggesting that postpetition taxes were treated as administrative expenses. *E.g., United States* v. *Noland*, 517 U. S. 535, 543 (1996) (corporate Chapter 11 debtor); *Nicholas* v. *United States*, 384 U. S. 678, 687–688 (1966) (corporate Chapter XI case under predecessor Bankruptcy Act). But those cases involve corporate debtors and are therefore inapposite. Among estates that are not separately taxable, those involving corporate debtors have long been singled out by

---

[8]The House Report stated—after noting that, in addition to prepetition taxes, "certain other taxes are entitled to priority"—that "[t]axes arising from the operation of the estate after bankruptcy are entitled to priority as administrative expenses." H. R. Rep., at 193. That is still true. Many taxes arising after bankruptcy, as in individual-debtor Chapter 7 or 11 cases, remain entitled to priority as administrative expenses. The Senate Report, meanwhile, stated: "*In general*, administrative expenses include taxes which the trustee incurs in administering the debtor's estate, including taxes on capital gains from sales of property *by the trustee* and taxes on income earned by the estate during the case." S. Rep., at 66 (emphasis added). That likewise remains true. Administrative expenses still include income taxes that "the trustee," as opposed to the debtor, has incurred—again, as in individual-debtor Chapter 7 or 11 cases.

Congress for special responsibilities.[9]  See H. R. Rep., at 277 (even "[i]f the estate is not a separate taxable entity," administrative responsibility can "var[y] according to the nature of the debtor").  Although estates of corporate debtors are not separate taxable entities under 26 U. S. C. §§1398 and 1399, the IRC requires a trustee that "has possession of or holds title to all or substantially all the property or business of a corporation" to "make the return of income for such corporation."  §6012(b)(3).  In effect, Congress provided that the trustee in a corporate-debtor case may shoulder responsibility that parallels that borne by the trustee of a separate taxable entity.  In any event, petitioners do not deny that neither the separate taxable entity provisions nor the special provisions for corporate debtors apply to them.

Finally, petitioners and the dissent contend that the purpose of 11 U. S. C. §1222(a)(2)(A) was to provide debtors with robust relief from tax debts, relying on statements by a single Senator on unenacted bills introduced in years preceding the enactment.  See Brief for Petitioners 23–36.  They argue that deeming §1222(a)(2)(A) inapplicable to their postpetition income taxes would undermine that purpose and confine the exception to prepetition taxes.  But we need not resolve here what other claims, if any, are covered by §1222(a)(2)(A).[10]  Whatever the 2005

––––––––––

[9] The original §346 established that the estate of a corporate debtor is not a separate taxable entity, but nonetheless provided that "the trustee shall make any [State or local] tax return otherwise required . . . to be filed by or on behalf of such . . . corporation."  §§346(c)(1)–(2), 92 Stat. 2565, 2566.  The current §346 similarly states, in the same provision deeming the debtor taxable when there is no separate taxable estate, that "[t]he trustee shall make such tax returns of income of corporations . . . . The estate shall be liable for any [State or local] tax imposed on such corporation."  §346(b).

[10] The dissent opines that employment taxes must be administrative expenses "incurred by the estate" because, in its view, they "do not fit easily" within the category of administrative expenses under

Congress' intent with respect to §1222(a)(2)(A), that provision merely carved out an exception to the pre-existing priority classification scheme. The exception could only apply to claims "entitled to priority under section 507" in the first place. That pre-existing scheme was in turn premised on antecedent, decades-old understandings about the scope of §503(b) and the division of tax liabilities between estates and debtors. See *Dewsnup* v. *Timm*, 502 U. S. 410, 419 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate'"). If Congress wished to alter these background norms, it needed to enact a provision to enable postpetition income taxes to be collected in the Chapter 12 plan in the first place.

The dissent concludes otherwise by an inverted analysis. Rather than demonstrate that such claims were treated as §507 priority claims in the first place, the dissent begins with the single Senator's stated purpose for the exception to that priority scheme. *Post,* at 7. It then reasons backwards from there, and in the process upsets background norms in both Chapters 12 and 13.

Certainly, there may be compelling policy reasons for treating postpetition income tax liabilities as dischargeable. But if Congress intended that result, it did not so provide in the statute. Given the statute's plain language, context, and structure, it is not for us to rewrite the statute, particularly in this complex terrain of interconnected provisions and exceptions enacted over nearly three decades. Petitioners' position threatens ripple effects beyond this individual case for debtors in Chapter 13 and the broader bankruptcy scheme that we need not invite. As the Court of Appeals noted, "Congress is entirely free to change the law by amending the text." 617 F. 3d, at 1167.

––––––––––

§503(b)(1)(A)(i), notwithstanding the Government's contrary representations on both points. *Post,* at 12. Because employment taxes are not at issue in this case, we offer no opinion on either question.

Opinion of the Court

\*    \*    \*

We hold that the federal income tax liability resulting from petitioners' postpetition farm sale is not "incurred by the estate" under §503(b) and thus is neither collectible nor dischargeable in the Chapter 12 plan. We therefore affirm the judgment of the Court of Appeals for the Ninth Circuit.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———

No. 10–875

———

## LYNWOOD D. HALL, ET UX., PETITIONERS *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 14, 2012]

JUSTICE BREYER, with whom JUSTICE KENNEDY, JUSTICE GINSBURG, and JUSTICE KAGAN join, dissenting.

Chapter 12 of the Bankruptcy Code helps family farmers in economic difficulty reorganize their debts without losing their farms. Consistent with the chapter's purposes, Congress amended §1222(a) of the Code to enable the debtor to treat certain capital gains tax claims as ordinary unsecured claims. 11 U. S. C. §1222(a)(2)(A). The Court's holding prevents the Amendment from carrying out this basic objective. I would read the statute differently, interpreting it in a way that, in my view, both is consistent with its language and allows the Amendment better to achieve its purposes.

### I
### A

Chapter 12 of the Bankruptcy Code helps indebted family farmers (and fishermen) keep their farms by making commitments to pay those debts (in part) out of future income. An eligible farmer whose debts exceed his assets may enter Chapter 12 bankruptcy, at which point he must develop a detailed Plan setting forth how he will pay his debts. That Plan must satisfy certain statutory criteria. §§1221, 1222, 1225.

A brief overview of these requirements helps to illumi-

nate what is at stake in this case. Roughly speaking, the chapter requires that a holder of a *secured claim* receive the full amount of that claim up to the value of the collateral securing the loan. The claim may be paid over an extended period. If the claim exceeds the value of the collateral, the creditor is given an unsecured claim in the remainder. §§506(a), 1225(a)(5).

The holder of a *§507 priority claim* (a category that includes, among other things, domestic support obligations, debts for taxes incurred before filing the bankruptcy petition, and administrative expenses) must receive the full amount of the priority claim in deferred cash payments paid over the life of the Plan. §1222(a)(2).

The holder of an *ordinary unsecured claim—i.e.,* an unsecured claim of a kind not listed in §507—may receive at least a partial payment from the amount left over after the payment of the secured and §507 priority claims. This amount may well be more than zero, for the Plan must provide that the farmer will devote all "disposable income" (as defined by §1225(b)(2)) or property of equivalent value to the repayment of his debts over the next three years (sometimes extended to five years). §§1222(c), 1225(b)(1). And that amount must prove sufficient to provide the unsecured creditor with no less than that creditor would receive in a Chapter 7 liquidation. §1225(a)(4).

Once the farmer completes his Plan payments, he will receive a discharge even if his payments did not *fully* satisfy all unsecured claims. The Code does not, however, permit all debts to be discharged. There are categories of *nondischargeable* debts (including, for example, secured claims), which creditors can pursue after bankruptcy. §1228(a).

For present purposes, it is important to understand that if the debtor owes too much money to his §507 priority creditors, he may not have sufficient assets or future income to pay all his secured creditors and his §507 prior-

ity creditors while leaving enough funds over to guarantee unsecured creditors the minimum amounts that Chapter 12 requires. If so, the farmer may not be able to proceed under Chapter 12. See §§1225(a)(1), (6) (bankruptcy court will not confirm Plan unless it satisfies statutory criteria and debtor will be able to make good on his commitments under the Plan).

It is also important to understand that the same kind of insufficient-assets-and-income problem might occur where the debtor owes the Government a large *post*-petition tax debt. In general, postpetition claims are not part of the bankruptcy proceedings. See 7 Norton Bankruptcy Law and Practice §135:14 (3d ed. 2011) (hereinafter Norton). Unless the Government's debt falls within an exception to this general rule, bankruptcy law would leave the Government to collect its postpetition claim outside of bankruptcy as best it could. Again, the result will be to leave the farmer with fewer assets and income to devote to his Chapter 12 Plan—perhaps to the point where he cannot proceed under Chapter 12 at all.

B

With this general summary in mind, it is easier to understand the significance of the question this case presents. The question arises out of an amendment to a Chapter 12 provision. The provision as amended says:

"**Contents of plan**
   "(a) The plan shall—

   .          .          .          .          .

   "(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless—
   "(A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, *in which case the*

*claim shall be treated as an unsecured claim that is*
*not entitled to priority under section 507*, but the debt
shall be treated in such manner only if the debtor re-
ceives a discharge; or

　　"(B) the holder of a particular claim agrees to a dif-
ferent treatment of that claim."　§1222(a) (emphasis
added).

The Amendment consists of subparagraph (A).

　At first blush, the Amendment seems to relegate the
capital gains tax collector to the status of an ordinary
unsecured creditor.　See *ibid.* (exception applies to claims
"owed to a governmental unit that arises as a result of the
sale . . . of any farm asset").　If, as petitioners claim, that
is so, then it is unlikely that such a debt could stop a
farmer from proceeding under Chapter 12, since its treat-
ment as an ordinary unsecured claim means that the
farmer will not necessarily have to pay the debt in full.

　But if the Government and the majority are right, then
the capital gains tax falls outside the category of §507
priority claims—and therefore falls outside the scope of
the Amendment; in fact, it falls outside the bankruptcy
proceeding altogether.　And the Government then might
well be able to collect the debt in full outside the bank-
ruptcy proceeding—even if doing so would reduce the
farmer's assets and future income to the point where the
farmer would not be able to proceed under Chapter 12.
The question before us is whether we must interpret the
Amendment in a way that could bring about this result.

## C

### 1

　Congress did not intend this result.　In a significant
number of instances a Chapter 12 farmer, in order to
have enough money to pay his creditors, might have to sell
farmland or other farm assets at a price that would give
rise to considerable capital gains taxes (particularly if the

family has held the land or assets for many years). If the resulting tax debt were treated as a §507 priority claim, then it might well absorb much of the money raised to the point where (depending upon the size of his other debts) the farmer might be unable to proceed under Chapter 12. The Amendment accordingly seeks to place the tax authorities farther back in the creditor queue, requiring them, like ordinary unsecured creditors, to seek payment from the funds that remain after the §507 priority creditors (and secured claim holders) have been paid.

The Amendment's chief legislative sponsor, Senator Charles Grassley, explained this well when he told the Senate:

> "Under current law, farmers often face a crushing tax liability if they need to sell livestock or land in order to reorganize their business affairs. . . . [H]igh taxes have caused farmers to lose their farms. Under the bankruptcy code, the I. R. S. must be paid in full for any tax liabilities generated during a bankruptcy reorganization. If the farmer can't pay the I. R. S. in full, then he can't keep his farm. This isn't sound policy. Why should the I. R. S. be allowed to veto a farmer's reorganization plan? [The Amendment] takes this power away from the I. R. S. by reducing the priority of taxes during proceedings. This will free up capital for investment in the farm, and help farmers stay in the business of farming." 145 Cong. Rec. 1113 (1999).

See also 14A J. Mertens, Law of Federal Income Taxation §54:61, p. 11 (Oct. 2011 Supp.) ("This provision attempts to mitigate the tax expense often incurred by farmers who have significant taxable capital gains or depreciation recapture when their low basis farm assets are foreclosed, sold, or otherwise disposed of by their creditors").

2

The majority, following the Government's suggestion, interprets the relevant language in a way that denies the Amendment its intended effect. It holds that the only income tax claims to which §507 accords priority are claims for taxes due for years *prior to the taxable year* in which the farmer filed for bankruptcy. (We shall call these "prepetition tax claims.") In the majority's view, §507 does not cover income tax liabilities that arise during the year of filing or during the Chapter 12 proceedings. (We shall call these "postpetition tax claims.") *Ante,* at 4–5; see Brief for United States 8 (the Amendment "provides farmers relief from [only] those tax claims that are otherwise entitled to priority under 11 U. S. C. 507(a)(8), namely pre-petition claims arising from the sale of farm assets"); Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, §705(1)(A), 119 Stat. 126 (amending §507(a)(8) to clarify that it only covers income tax claims for taxable years that end on or before the date of the filing of the bankruptcy petition).

The majority then observes that the Amendment creates an exception only in respect to §507 priority claims. §1222(a) ("The plan shall . . . provide for the full payment . . . of all claims entitled to priority under section 507, *unless* . . . ." (Emphasis added.)). *Ante,* at 2. Thus, if (without the Amendment) §507 would not cover postpetition capital gains taxes in the first place, the Amendment (creating only a §507 exception) cannot affect postpetition tax claims. An exception from nothing amounts to nothing.

Consequently, the majority concludes that postpetition tax claims fall outside the bankruptcy proceeding entirely; the tax authorities can collect them as if they were ordinary tax debts; and the Government's efforts to collect them can lead to the very results (blocking the use of Chapter 12) that the Amendment sought to avoid.

Therein lies the problem. These results are the very opposite of what Congress intended. Congress did not want to relegate to ordinary-unsecured-claim status only prepetition tax claims, *i.e.,* tax claims that accrued well before the Chapter 12 proceedings began. Rather, Congress was concerned about the effect on the farmer of collecting capital gains tax debts that arose during (and were connected with) the Chapter 12 proceedings themselves. See 145 Cong. Rec. 1113 (the Amendment will have the effect of "reducing the priority of taxes *during proceedings*" (emphasis added) (statement of Sen. Grassley during a failed attempt to enact the Amendment)); Hearing on the Bankruptcy Reform Act of 2001 before the Senate Committee on the Judiciary, 107th Cong., 1st Sess., 121 (statement of Sen. Grassley) ("[The Amendment] also reduces the priority of capital gains tax liabilities for *farm assets sold as a part of a reorganization plan*" (emphasis added)). The majority does not deny the importance of Congress' objective. Rather, it feels compelled to hold that Congress put the Amendment in the wrong place.

## II

Unlike the majority, I believe the relevant Bankruptcy Code language can be and is better interpreted in a way that would give full effect to the Amendment. In particular, the relevant language is better interpreted so that in the absence of the Amendment §507 would cover these postpetition tax claims. Hence the Amendment creates an exception from what otherwise would amount to a §507 priority claim. And it can take effect as written.

It is common ground that subsection (a)(2) of §507 covers, and gives §507 priority to, "administrative expenses allowed under section 503(b)." §507(a)(2) (2006 ed., Supp. IV). It is also common ground that the relevant definitional section, namely §503(b), defines allowed "adminis-

trative expenses" as "including . . . any tax . . . incurred by
the estate." §503(b)(1)(B)(i) (2006 ed.). But after this
point, we part company.

The majority believes that the words any tax "incur-
red by the estate" cannot include postpetition taxes. It
emphasizes that *tax* law does not treat a Chapter 12
bankruptcy estate as a "separate taxable entity," *i.e.,* as
separate from the farmer-debtor for federal income tax
purposes. 26 U. S. C. §§1398, 1399. This means that
there is just one entity—the debtor—for these purposes.
And §346 of the Bankruptcy Code makes clear that any
state and local income tax liabilities incurred by a Chapter
12 estate must also be taxed to the *debtor.* The majority
says that these provisions mean that only the debtor, and
not the estate, can "'incu[r]'" taxes within the meaning of
11 U. S. C. §503(b)(1)(B)(i). *Ante,* at 4–5.

In my view, however, these tax law circumstances do
not require the majority's narrow reading of this Bank-
ruptcy Code provision. That is to say, the phrase tax
"incurred by the [bankruptcy] estate" can include a tax
incurred by the farmer while managing his estate in the
midst of his bankruptcy proceedings, *i.e.,* between the time
the farmer files for Chapter 12 bankruptcy and the time
the bankruptcy court confirms the farmer's Chapter 12
Plan.

The bankruptcy estate is in existence during this time.
Cf. §1227(b) (property of the estate vests in the debtor
at confirmation unless the Plan provides otherwise). The
bankruptcy court has jurisdiction over the farmer's assets
during this time. See §§541, 1207; 4 Norton §61:1, at 61–2
(§541's "broad definition of estate property . . . centralizes
all of the estate's assets under the jurisdiction of the bank-
ruptcy court"). And, as a matter of both the English lan-
guage and bankruptcy principles, one can consider a tax
liability that the farmer incurs during this period (such as
a capital gains tax arising from a sale of a portion of his

farm assets to raise funds for creditors) as a liability that, in a bankruptcy sense, the estate incurs.

The English language permits this reading of the phrase tax "incurred by the estate." When the farmer, in the midst of Chapter 12 proceedings, sells a portion of his farm to raise money to help pay his creditors, one can say, as a matter of English, that the bankruptcy estate has "incurred" the associated tax, even if it is ultimately taxed to the farmer, just as one can say that an employee who makes purchases using a company credit card "incurs costs" for which his employer is liable.

As a matter of general bankruptcy principles (as Congress understood them), the history of the 1978 Bankruptcy Code revision is replete with statements to the effect that *"[t]axes arising from the operation of the estate* after bankruptcy are entitled to priority as administrative expenses." H. R. Rep. No. 95–595, p. 193 (1977) (emphasis added). See S. Rep. No. 95–1106, p. 13 (1978) (administrative expenses include "[t]axes incurred *during the administration of the estate*" (emphasis added)); S. Rep. No. 95–989, p. 66 (1978) ("In general, administrative expenses include taxes which the trustee *incurs in administering the debtor's estate*, including taxes on capital gains from sales of property by the trustee and taxes on income earned by the estate *during the case*" (emphasis added)); 124 Cong. Rec. 32415 (1978) ("The amendment generally follows the Senate amendment in providing expressly that taxes incurred *during the administration of the estate* share the first priority given to administrative expenses generally" (emphasis added)); *id.,* at 34014 (Senate version of the joint floor statement saying exactly the same).

And importantly, as the majority concedes, *ante,* at 14–15, bankruptcy law treats taxes incurred by corporate debtors while they are in bankruptcy proceedings as "tax[es] incurred by the estate," even though the Tax Code does *not* treat the bankruptcy estate of a corporate debtor

as a "separate taxable entity." See, *e.g., United States* v. *Noland*, 517 U. S. 535, 543 (1996) (treating Chapter 11 corporate debtor's postpetition taxes as administrative expenses); *In re Pacific-Atlantic Trading Co.*, 64 F. 3d 1292, 1298 (CA9 1995) (same); *In re L. J. O'Neil Shoe Co.*, 64 F. 3d 1146, 1151–1152 (CA8 1995) (same); *In re Hillsborough Holdings Corp.*, 156 B. R. 318, 320 (Bkrtcy. Ct. MD Fla. 1993) ("[A]dministrative expenses should include taxes which the trustee, and, in Chapter 11 cases, the Debtor-in-Possession, incurs in administering the estate, including taxes based on capital gains from sales of property and taxes on income earned by the estate during the case post-petition").

Even though, as the majority says, corporate bankruptcies have some special features (in particular, a trustee in a corporate bankruptcy is required to file the estate's income tax return), it is unclear why these features should have any bearing on the definition of administrative expenses. See *ante,* at 15 (discussing 26 U. S. C. §6012(b)(3)). Indeed, in many corporate Chapter 11 bankruptcies, there is no trustee, in which case the debtor-in-possession, just like an individual Chapter 12 debtor, must file the tax return. See 11 U. S. C. §§1104, 1107 (2006 ed. and Supp. IV); 5 Norton §§91:3, 93:1 (typically, no trustee is appointed in a Chapter 11 bankruptcy, and the debtor-in-possession assumes most of the duties and powers of a trustee, continuing in possession and managing the business until the court determines, upon request of a party in interest, that grounds exist for the appointment of a trustee); *Holywell Corp.* v. *Smith*, 503 U. S. 47, 54 (1992) ("As the assignee of 'all' or 'substantially all' of the property of the corporate debtors, the trustee must file *the returns that the corporate debtors would have filed had the plan not assigned their property to the trustee*" (emphasis added)).

Consequently, I can find no strong bankruptcy law

reason for treating taxes incurred by a corporate debtor differently from those incurred by an individual Chapter 12 debtor. To the contrary, since corporations can file for bankruptcy under Chapter 12, the majority's argument implies that the treatment of postpetition taxes in Chapter 12 proceedings turns on whether the debtor happens to be a corporation. See §101(18)(B) (2006 ed.) (defining "family farmer" to include certain corporations); §109(f) ("Only a family farmer or family fisherman with regular annual income may be a debtor under chapter 12"); Brief for United States 26, n. 9 ("[T]he estate of a corporate (as opposed to individual) Chapter 12 debtor . . . could be viewed as incurring post-petition income taxes . . . collectible as administrative expenses . . . rather than outside the bankruptcy case as required for an individual Chapter 12 debtor").

The majority does not point to any adverse consequences that might arise were bankruptcy law to treat taxes incurred in administering the bankruptcy estate (*i.e.,* taxes incurred after filing and before Plan confirmation) as administrative expenses. The effect of doing so would simply be to consider the debtor and estate as *merged* for purposes of determining which taxes fall within the Bankruptcy's Code's definition of "administrative expenses," *i.e.,* determining for that purpose that the estate may "incur" tax liabilities on behalf of the whole (with the ultimate liability assigned to the debtor), much like a married couple filing jointly, 26 U. S. C. §6013(a), or an affiliated group of corporations filing a consolidated tax return, §1501. Cf. *In re Lumara Foods of America, Inc.*, 50 B. R. 809, 815 (Bkrtcy. Ct. ND Ohio 1985) (describing the history of §503(b)(1)(B)(i) and concluding that "the elevation [of a tax] to an administrative priority is dependent upon when the tax accrued"). In fact, the very tax provisions that separate the estate from the individual debtor in Chapter 7 and Chapter 11 proceedings, §§1398 and

1399, say that the Chapter 12 estate is *not separate* from the debtor for tax purposes—a concept consistent, not at odds, with merging the two for this bankruptcy purpose.

Nor is the majority's reading free of conceptual problems. If we read the phrase tax "incurred by the estate" as *excluding* tax liabilities incurred while the farmer is in Chapter 12 bankruptcy, we must read it as excluding not only capital gains taxes but also other kinds of taxes, such as an employer's share of Social Security taxes, Medicare taxes, or other employee taxes. But no one claims that *all* of these taxes fall outside the scope of the term "administrative expenses." See *In re Ryan*, 228 B. R. 746 (Bkrtcy. Ct. Ore. 1999) (treating postpetition employment taxes as administrative expenses in a Chapter 12 proceeding); IRS Chief Counsel Advice No. 200518002 (May 6, 2005), 2005 WL 1060956 (assuming that some postpetition federal taxes can be treated as administrative expenses in a Chapter 12 bankruptcy).

In fact, the Government, realizing it cannot go this far, concedes that many of these other (*e.g.,* employer) taxes are "administrative expenses," but only, it suggests, because they fall within a different part of the "administrative expenses" definition, namely 11 U. S. C. §503(b)(1)(A), which says that "administrative expenses" include "the actual, *necessary costs and expenses of preserving the estate* including . . . wages, salaries, and commissions for services rendered after the commencement of the case." (Emphasis added.) See Brief for United States 27–28, n. 11. Employment taxes, however, do not fit easily within the rubric "wages, salaries, and commissions." They may well be "necessary costs and expenses of preserving the estate." But then so are the capital gains taxes at issue here.

Finally, the majority makes what I believe to be its strongest argument. *Ante,* at 9–12. Chapter 13, it points out, allows individuals (typically those who are not farm-

ers or fishermen) to reorganize their debts in much the same way as does Chapter 12. And there is authority holding that taxes on income earned between the time the Chapter 13 debtor files for bankruptcy and the time the bankruptcy Plan is confirmed are not "tax[es] incurred by the estate." See *In re Whall*, 391 B. R. 1, 5–6 (Bkrtcy. Ct. Mass. 2008); *In re Brown*, No. 05–41071, 2006 WL 3370867, \*3 (Bkrtcy. Ct. Mass. 2006); *In re Jagours*, 236 B. R. 616, 620, n. 4 (Bkrtcy. Ct. ED Tex. 1999); *In re Gyulafia*, 65 B. R. 913, 916 (Bkrtcy. Ct. Kan. 1986). Why, asks the majority, should the law treat Chapter 12 taxes differently?

For one thing, the issue is less important in a Chapter 13 case, for the relevant time period—between filing and Plan confirmation—is typically very short. Compare H. R. Rep. No. 95–595, at 276 ("most chapter 13 estates will only remain open for 1 or 2 months until confirmation of the plan"), with Brief for Neil E. Harl et al. as *Amici Curiae* 32–33 (survey of Chapter 12 bankruptcies found the average time from filing to confirmation in a district ranged from nearly five months to over three years). See also 7 Norton §122:14, at 122–27 ("In Chapter 13, the plan must be filed within 15 days after the filing of the petition, unless the time is extended for cause. A Chapter 12 Plan must be filed no later than 90 days after the order for relief, unless the court finds that an extension is substantially justified" (footnote omitted)).

For another, the issue arises differently in a Chapter 13 case. That chapter, unlike Chapter 12, contains a special provision that permits the Government to seek §507 priority treatment of all taxes incurred while the bankruptcy case is pending. §1305 (Government can file proof of claim to have postpetition taxes treated as if they had arisen before the petition was filed).

Finally, if uniformity of interpretation between these two chapters is critical, I do not see the serious harm in

treating the relevant taxes as "administrative expenses" in *both* Chapter 12 and Chapter 13 cases rather than in neither. The majority apparently believes that this would render §1305 (the provision permitting the Government to seek §507 priority treatment) superfluous. *Ante,* at 10–12. But that is not so. This interpretation would simply limit the scope of operation of §1305 to the period of time *after* the Chapter 13 Plan is confirmed but while the Chapter 13 case is still pending. And that is likely to be a significant period of time relative to the preconfirmation period. See H. R. Rep. No. 95–595, at 276 ("[M]ost chapter 13 estates will only remain open for 1 or 2 months until confirmation of the plan"); §§1325(b)(1), (4) (debtor must commit all his projected disposable income over a 3-year period (sometimes extended to five) to the Plan, unless all unsecured claims can be paid off over a shorter period). The greatest Chapter 13 harm this interpretation could cause is to require the Government to pursue those tax liabilities as §507 priority administrative expense claims (rather than allow it to choose between §507 priority treatment and pursuing those claims outside bankruptcy) during the relatively brief period of time between the filing of a petition and the Plan's confirmation.

In sum, I would treat a postpetition/preconfirmation tax liability as a tax "incurred by the estate," hence as an "administrative expense," hence as a "clai[m] entitled to priority under section 507, unless . . . ," hence as a claim falling within the scope of the Amendment. Doing so would allow the Amendment to take effect as Congress intended.

## III

The Government argues that, even if tax liabilities arising during the bankruptcy proceedings are "administrative expenses," they still do not fall within the Amendment's scope. It says that neither the Amendment nor

anything else in §1222(a) provides for the payment of administrative expenses. Rather, that section and its Amendment provide only for the payment of "claims." §1222(a)(2) ("The plan shall . . . provide for the full payment . . . of all *claims* entitled to priority under section 507, unless . . ." (emphasis added)). And administrative expenses, the Government says, like all debts that are incurred postpetition, are not "claims."

The Government finds support for its view in the fact that that §1222 deals with the contents of a "plan," while a later section, §1227(a), says that the provisions of a "confirmed plan bind the debtor, each *creditor*, [and certain others of no relevance here]." (Emphasis added.) This is because the Code defines *"creditor"* to include only holders of *pre*-petition claims, thus excluding holders of *post*-petition claims, such as administrative expenses. §101(10).

The Government points out that a *different* Code section, namely §1226(b)(1), provides for the payment of administrative expenses. That section says that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid . . . any unpaid claim of the kind specified in section 507(a)(2)," namely "administrative expenses." And Congress did not amend §1226(b)(1); it amended the earlier section, §1222(a).

In short, the Government says, the Plan only covers those §507 priority "expenses and claims" that are described as "claims" and can be held by "creditors." Section 1226(b)(1), not §1222, deals with administrative expenses. The bottom line of the Government's chain of logic is, once again, that Congress put the Amendment in the wrong place.

I concede that there is some text and legislative history that supports the Government's view that the word "claim" in §1222(a) does not include "administrative expenses." See, *e.g.,* §507(a) (referring to "expenses and

claims" as if they are separate categories); S. Rep. No. 95–1106, at 20 ("The committee amendments contain several changes designed to clarify the distinction between a 'claim' (which generally relates to a debt incurred before the bankruptcy petition is filed) and an administrative expense (which is an expense incurred by the trustee after the filing of the petition)").

But the language does not demand the Government's reading. For the Code also uses the word "claim" to cover *both* prepetition and postpetition claims (such as administrative expenses). *E.g.,* §101(5)(A) (defining a claim as a "right to payment"); §726(b) (2006 ed., Supp. IV) (referring to "claims" that include administrative expenses). Indeed, the very section that the Government says permits separate collection of administrative expenses, namely §1226(b)(1), refers to "any unpaid *claim"* for administrative expenses. (Emphasis added.) And one can easily read that section as setting forth *when,* not *whether,* administrative expenses will be paid under the Plan (*i.e.,* as specifying that the Plan must provide for the payment of administrative expenses before payments to other creditors are made). Thus, reading §1222(a)(2)'s reference to "claims" as including administrative expenses need not render §1226(b)(1) surplusage.

What about §1227(a), which refers only to "creditor[s]"? One must read it in conjunction with §1228(a), which provides that once the debtor has completed all payments under the Plan, "the court shall grant the debtor a discharge of [1] all debts provided for by the plan[,] [2] *allowed under section 503 of this title [which describes 'administrative expenses']* or [3] disallowed under section 502 of this title . . . ." (Emphasis added.) (The first few words of §1227(a)—"[e]xcept as provided in section 1228(a)"— explain why I say "must"; the comma comes from 7 Norton §137:2, at 137–3, n. 1, which says that its omission was a typographical error). Thus, by here referring to "adminis-

trative expenses" (through its reference to §503), Chapter 12 makes clear that at least *some* postpetition claims are to be discharged once the debtor has completed his payments under the Plan. That fact, in turn, suggests that the Plan may provide for their payment and that the holders of such claims may be bound by the terms of a confirmed Plan.

The upshot is that the Government's second argument presents a plausible, but not the *only* plausible, interpretation of the Code's language. And the Government's second argument, like the majority's argument, has a problem, namely that it reduces Congress' Amendment to rubble. For that reason I believe it does not offer the better interpretation of the relevant language.

## IV

In sum the phrase tax "incurred by the estate" in §503(b) (the "administrative expense" section) and the word "claim" in §1222(a) are open to different interpretations. Each of the narrower interpretations advanced by the Government or adopted by the Court would either exclude postpetition taxes from the phrase taxes "incurred by the estate" or exclude all postpetition debts, including administrative expenses, from the word "claim." In these ways, these interpretations would, as I have said, prevent the Amendment from accomplishing its basic purpose.

A broader interpretation of the word "claim" may allow the Plan to include certain postpetition debts. This, taken together with a broader interpretation of the phrase tax "incurred by the estate," prevents the Government from collecting postpetition/preconfirmation tax debts outside of Chapter 12, requiring it to assume a place in the creditor queue. Together these broader interpretations permit the Amendment to take effect as intended.

I find this last-mentioned consideration determinative. It seems to me unlikely that Congress, having worked on

revisions of the Code for many years with the help of Bankruptcy experts, and having considered the Amendment several times over a period of years, would have made the drafting mistake that the Government and the majority necessarily imply that it made. Moreover, I believe it important that courts interpreting statutes make significant efforts to allow the provisions of congressional statutes to function in the ways that that the elected branch of Government likely intended and for which it can be held democratically accountable.

For these reasons, with respect, I dissent.