IKUTA, Circuit Judge,
dissenting:
Today the majority interprets the Tax Code to allow unmarried taxpayers who buy an expensive residence together to deduct twice the amount of interest paid on the debt secured by their residence than spouses would be allowed to deduct. While the language of the relevant statute is ambiguous, the IRS has offered an interpretation that limits unmarried taxpayers in this situation to deducting the same amount as married taxpayers filing jointly. Because we should defer to this reasonable interpretation by the IRS, I dissent.
I
The Internal Revenue Code provides that interest paid or accrued on indebtedness shall generally be allowed as a federal tax deduction. 26 U.S.C. § 163(a). Deductions for personal interest paid or accrued are generally disallowed. Id. § 163(h)(1). Congress made an exception from this disallowance for “qualified residence interest (within the meaning of [§ 163(h)(3)]).” Id. § 163(h)(2). “Qualified residence interest” is defined in § 163(h)(3) as follows:
(3) Qualified residence interest — For
purposes of this subsection—
(A) In general. — The term “qualified residence interest” means any interest which is paid or accrued during the taxable year on—
(i) acquisition indebtedness with respect to any qualified residence of the taxpayer, or
(ii) home equity indebtedness with respect to any qualified residence of the taxpayer.
The statute defines “qualified residence” as “the principal residence” of a taxpayer and one other selected home used as a residence. Id. § 163(h)(4)(A)®. The term “acquisition indebtedness,” is defined as debt “incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and [which] is secured by such residence.” Id. § 163(h)(3)(B). But not all such debt counts as acquisition indebtedness. Rather, “[t]he aggregate amount treated as acquisition indebtedness for any period shall not exceed $1,000,000 ($500,000 in the case of a married individual filing a separate return).” Id. § 163(h)(3)(B)(ii). Similarly, the term “home equity indebtedness” - is defined as “indebtedness (other than acquisition indebtedness) secured by a qualified residence....” Id. § 163(h)(3)(C)®. But again, not all the debt secured by the *1069 qualified residence counts as home equity-indebtedness. Like the case of acquisition indebtedness, “[t]he aggregate amount treated as home equity indebtedness for any period shall not exceed $100,000 ($50,-000 in the case of a separate return by a married individual).” Id.
§ 163(h) (3)(C) (ii).
The IRS has adopted a straightforward application of this statute when there is a single taxpayer or a married couple filing jointly. If a qualified residence serves as security for debt that is more than the specified $1.1 million, only the interest payments on the allowed $1.1 million of the debt are deductible. In the case of an individual taxpayer, the IRS calculates the proportion of the taxpayer’s total interest payments that is deductible by dividing the $1.1 million of debt by the total amount of debt secured by the qualified residence. See 26 C.F.R. § 1.163-10T(e);[1] Chief Couns. Advice, IRS CCA 200911007, 2009 WL 641772.[2] So if the qualified residence is security for $2.2 million in debt, the taxpayer can calculate the proportion of interest payments that is deductible by dividing $1.1 million (the total aggregate debt allowed by the statute) by $2.2 million (the total amount of debt secured by the qualified residence). The result is that the taxpayer can deduct one half of the interest the taxpayer paid on the total debt.
Similarly, spouses filing jointly are subject to the $1,000,000 limit on acquisition indebtedness and the $100,000 limit on home equity indebtedness. See Pau v. Comm’r, 73 T.C.M. (CCH) 1819, 1997 WL 28678, at *1, 12 (1997). This approach is consistent with the Tax Code’s typical treatment of a married couple filing jointly as one taxpayer, who together have an aggregate debt and together are subject to the statutory limit on how much interest they may deduct. See, e.g., 26 C.F.R. § 1.179 — 2(b)(5) (i) (“A husband and wife who file a joint income tax return ... are treated as one taxpayer in determining the amount of the dollar limitation under ... this section.”); 26 C.F.R. § 1.469-lT(j)(l) (“[Sjpouses filing a joint return for a taxable year shall be treated for such year as one taxpayer for purposes of section 469.”).
The IRS has also explained how this methodology applies when there are unmarried co-owners of a qualified residence. See Chief Couns. Advice, IRS CCA 200911007, 2009 WL 641772. Under the IRS’s interpretation, regardless of the number of unmarried taxpayers who have an ownership interest in a qualified residence, only interest payments on $1.1 mil *1070 lion of the debt encumbering that qualified .residence are deductible. Therefore, the IRS applies its formula as follows: each co-owner who has an ownership interest in the qualified residence may deduct a percentage of the interest payments the co-owner paid or accrued, in proportion to the total aggregate debt allowed by the statute ($1.1 million) divided by the total amount of debt secured by the qualified residence. In other words, if a taxpayer has an ownership interest in a qualified residence that is security for $2.2 million of debt, the taxpayer can deduct one half of the inter.est payments that the taxpayer made on that debt ($1.1 million debt allowed by statute divided by $2.2 million debt secured by the qualified residence). The other co-owners can do the same.
II
Bruce Voss and Charles Sophy argue that we should reject the IRS’s interpretation of 26 U.S.C. § 163(h) and allow them double the deductible interest that an individual taxpayer or married couple filing jointly would get. Voss and Sophy are an unmarried couple who both claim the same qualified residence, which is comprised of two houses. In order to purchase their primary home in Beverly Hills, California, they took out a $2,240,000 loan. They also borrowed another $300,000 home equity line of credit secured by the Beverly Hills home. In order to purchase their second home in Rancho Mirage, California, they took out a $486,300 loan. Voss and Sophy purchased these houses as joint tenants, meaning that each had an undivided one-half interest in the house. They also agreed to be jointly and severally liable on all loans.
Voss and Sophy filed separate tax returns for tax years 2006 and 2007. The average balance on the two mortgages and home equity line of credit was approximately $2.7 million in tax years 2006 and 2007. Nevertheless, both Voss and Sophy claimed deductions for the full amount of interest each had paid on the loans on their qualified residence.[3]
The IRS issued notices of deficiency because Voss and Sophy had claimed deductions that exceeded the limits allowed by the Internal Revenue Code. According to the IRS, Voss and Sophy could claim deductions for interest they had paid on the first $1.1 million of the $2.7 million debt, pursuant to 26 U.S.C. § 163(h)(3), and were not entitled to claim deductions for interest paid on the entire $2.7 million of the debt. The tax court agreed.
On appeal, Voss and Sophy argue for a different interpretation of § 163(h) and therefore a different application of the IRS formula. Voss and Sophy claim that the $1.1 million “aggregate amount” of debt that can be treated as acquisition and home equity indebtedness for purposes of § 163(h)(3)(B) does not relate to the total amount of debt encumbering a qualified residence. Instead, if the total amount of debt encumbering a qualified residence exceeds $1.1 million, the co-owners may effectively divide that total amount of debt between themselves and each deduct interest payments on up to $1.1 million of their portion of the total debt. For example, if a $2.2 million debt is secured by a qualified residence owned by two co-owners, Voss and Sophy claim that the co-owners can divide the debt equally between themselves. Under this theory, Co-Owner 1 could deduct interest payments made on $1.1 million of debt (i.e., 100 percent of Co-Owner l’s interest payments), and of course, Co-Owner 2 could do the same thing. As a result, the co-owners could deduct interest payments on $2.2 million of debt secured by their qualified residence, *1071 even though a married couple filing jointly or a single taxpayer could deduct interest on only $1.1 million of debt.
Applying their interpretation, Voss argues that, because he and Sophy each have an “equal share of the mortgage,” he and Sophy have divided the $2.7 million debt between themselves on a fifty-fifty basis. Therefore, Voss can deduct interest payments made on $1.1 million of his $1.35 million portion of the debt secured by his qualified residence. Dividing $1.1 million (the total aggregate debt allowed by the statute) by $1.35 million (Voss’s self-apportioned amount of debt secured by the qualified residence), this means about 80 percent of his interest payments is deductible. And, the argument goes, Sophy can do the same thing. As a result, Voss and Sophy claim they can deduct 80 percent of the interest paid on $2.7 million, the total indebtedness on their qualified residence, rather than deducting 40 percent of the interest paid on that debt had they been a married couple.
Ill
Voss and Sophy’s approach to § 163(h) should be rejected because it is contrary to the IRS’s reasonable and persuasive interpretation of the statute. Voss and Sophy cannot claim that the plain language of § 163(h) compels their interpretation; rather, the statute gives no indication that multiple co-owners may each “treat” $1.1 million of debt as “acquisition indebtedness” or “home equity indebtedness” for purposes of an interest deduction. In these circumstances, we can afford respect to an agency’s interpretation of a statute, whether it is offered in an opinion letter, policy statement, agency manual, or even a well-reasoned legal brief. See Christensen v. Harris Cnty., 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); see also Christopher v. SmithKline Beecham Corp., — U.S. -, 132 S.Ct. 2156, 2165-66, 2169, 183 L.Ed.2d 153 (2012). An agency interpretation of a statute is entitled to a “measure of deference proportional to the ‘ “thoroughness evident in. its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.” ’ ” Christopher, 132 S.Ct. at 2168-69 (quoting United States v. Mead Corp., 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (quoting Skidmore, 323 U.S. at 140, 65 S.Ct. 161)). We also consider the specialized and technical expertise of the agency, see Skid-more, 323 U.S. at 140, 65 S.Ct. 161 (noting that the “rulings, interpretations and opinions” of an agency “constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance”), as well as whether the agency’s guidance is longstanding or merely a litigating position. See Alaska Dept. of Envtl. Conservation v. EPA 540 U.S. 461, 487-88, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004) (“We ‘normally accord particular deference to an agency interpretation of “longstanding” duration (quoting Barnhart v. Walton, 535 U.S. 212, 220, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002))).
Here, the IRS’s position, expressed in its legal brief on appeal and in its 2009 Chief Counsel Advice statement, is both reasonable and persuasive. First, it is consistent with the text of the statute: the language of § 163(h)(3) is reasonably read to establish that the debt limit of $1.1 million per qualified residence applies regardless whether there is one owner or two co-owners. The fact that “acquisition indebtedness” is defined as debt secured by a qualified residence suggests that Congress also contemplated that the “aggregate amount treated as acquisition indebtedness” was also defined with respect to a qualified residence. 26 U.S.C. § 163(h)(3)(B).
*1072 And the IRS’s interpretation is more persuasive than Voss and Sophy’s interpretation, which would result in a windfall to unmarried taxpayers. See Tablada v. Thomas, 538 F.3d 800, 807 (9th Cir.2008) (holding that the Bureau of Prisons’s method for calculating good time credits was a reasonable interpretation of the statute, in part because the plaintiffs contrary method would result in a “windfall” to prisoners that Congress did not intend). There is no basis to infer that Congress intended to allow unmarried co-owners of a qualified residence filing separately to deduct interest on up to $2.2 million of debt, while limiting married co-owners of a qualified residence to deduct interest on only half that (only up to $1.1 million of debt). A more logical inference is that the deduction was aimed at promoting home ownership for ordinary folks, not to help wealthy individuals purchase mansions that are encumbered with more than $1.1 million of debt.
Third, the IRS has applied its expert interpretation of § 163(h) consistently for many years. See id. at 807-08 (noting that the Bureau of Prisons had calculated good time credits by a consistent methodology for at least sixteen years). The IRS first set forth a methodology for determining what proportion of a taxpayer’s interest payments is deductible in 1987, when it promulgated regulation § 1.163-10T(e). It explained how this method applied to co-owners of a qualified residence in its Chief Counsel Advice statement in 2009. IRS CCA 200911007, 2009 WL 641772. There is no dispute that the IRS’s approach for calculating the deductibility of interest payments under § 163(h)(3)(B) is not merely “an agency’s convenient litigating position.” Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Under these circumstances, it is appropriate to defer to the IRS’s specialized expertise and understanding of what best effectuates the purpose of the statute.[4]
In response to the IRS’s reasonable interpretation of § 163(h)(3)(B), Voss and Sophy look for help in a separate section of the Tax Code governing apportioning gain based on the sale of a residence, 26 U.S.C. § 121, and its accompanying regulation, 26 C.F.R. § 1.121-2. Section 121 allows a taxpayer who sells a residence to exclude up to $250,000 of gain from gross income. 26 U.S.C. § 121(b)(1). The regulations clarify that “[i]f taxpayers jointly own a principal residence but file separate returns, each taxpayer may exclude from gross income up to $250,000 of gain that is attributable to. each taxpayer’s interest in the property....” 26 C.F.R. § 1.121-2(a)(2). Voss and Sophy argue that because § 163(h) cross-references 26 U.S.C. § 121 for the definition of a “qualified residence,” the methodology set forth in § 1.121-2(a)(2) should also apply to § 163(h). Accordingly, they argue, because they jointly own a qualified residence, and file separate returns, they should likewise be able to deduct the amount of interest each paid on $1.1 million of debt out of each co-owner’s “equal share of the mortgage.” But section 121 provides Voss and Sophy no support because it has nothing to do with § 163(h)(3). Other than the use of § 121 *1073 for the definition of “qualified residence,” there is no indication that either Congress or the IRS contemplated that the methodology in § 1.121-2(a) should be used to determine the method of determining which interest is deductible under 26 U.S.C. § 163(h)(3). Voss and Sophy’s argument merely shows the IRS knew how to authorize such a methodology when it chose to do so, which it did not when interpreting § 163(h).
In the absence of an IRS regulation interpreting § 163(h) as allowing co-owners to claim deductions attributable to more than $1.1 million of debt for a co-owned qualified residence, we should defer to the IRS’s interpretation of the statute as limiting co-owners to deducting interest on $1.1 million of debt out of the total acquisition and home equity debt secured by the qualified residence. See Christensen, 529 U.S. at 587,120 S.Ct. 1655.
IV
The majority agrees that the statute is silent as to how to apply the debt limit of $1.1 million when there are co-owners of a qualified residence. Maj. Op. at 1054-55, 1057. The majority therefore exerts “considerable effort,” id. at 1057, to find textual support for using the approach demanded by Voss and Sophy. The majority bases its ruling on the thinnest of reeds: the parenthetical in § 163(h)(3) that specifies that a married individual filing separately can deduct interest payments on half the amount of debt compared to a single individual or a married couple filing jointly. According to the majority, in order to avoid absurdity, we should read the marriage parenthetical as allowing married individuals filing separately each to deduct interest on $550,000 of debt. Maj. Op. at. 1058-59. If married individuals filing separately were not each able to deduct interest on $550,000 of debt through some unspecified calculation methodology, the majority asserts, spouses filing separately would receive half the deduction of spouses filing jointly. This is absurd, the majority claims, because a different debt limit for a jointly filing couple and a separately filing couple is “surely not what the statute intended.” Maj. Op. at 1059. The majority then leaps from this inferred congressional intent to a different • conclusion: Congress must also have intended to allow all unmarried individuals who co-own a qualified residence secured by debt to deduct interest on the full debt limit, $1.1 million.
This argument too fails. First, effectuating the majority’s approach to the marriage parenthetical would presumably entail allowing a married taxpayer filing separately to deduct his or her own interest payments on the debt in the proportion of $550,000 divided by one half of the total debt secured by the qualified residence. See Maj. Op. at 1064 n. 11 (agreeing that the IRS’s formula set out in § 1.163-10T(e) “may need to be adjusted to account for the situation of separately filing co-owners, whether married or unmarried”). If each married taxpayer took this approach, married taxpayers filing separately would deduct the same amount of interest as married taxpayers filing jointly. But this approach fails for the same reason Voss and Sophy’s apportionment theory fails: it flies free of the statutory language that limits the amount “treated” as acquisition or home equity indebtedness to a capped amount out of the total acquisition or home equity indebtedness secured by the residence (rather than one co-owner’s half of that total debt).[5] We should instead defer to the *1074 IRS’s reasonable interpretation that the statute defines “acquisition indebtedness” as “indebtedness incurred in acquiring a qualified residence of the taxpayer — not as indebtedness incurred in acquiring taxpayer’s portion of a qualified residence.” IRS CCA 200911007, 2009 WL 641772.
More importantly, the majority’s a/rgu-mmtum ad absurdum fails because imposing a penalty on married individuals for filing separately would not be not absurd. We know that Congress could reasonably decide to discourage a married couple from filing separate returns to minimize taxes, because it has imposed such penalties in other portions of the Tax Code. For example, the Tax Code prohibits married individuals filing separately from claiming certain tax credits or deducting interest on other types of loans. See, e.g., 26 U.S.C. § 32(d) (married individual filing separately is not eligible for an earned income credit); id. § 221(e) (married individual filing separately is not eligible for deducting interest on student loans). Indeed, a tax court has already held that the plain language of § 163(h) may result in a penalty on a married couple filing separately compared to a married couple filing jointly. See Bronstein v. Comm’r, 138 T.C. 382, 383-84 (2012) (rejecting a taxpayer’s argument that Congress intended for married couples filing separately to receive the same treatment under § 163(h)(3) as married couples filing jointly)..
Rather, the absurdity argument works against the majority. The majority’s approach would result in spouses filing jointly (or separately) getting half the total deduction of unmarried individuals.[6] The majority writes this off as a marriage penalty, supported by hypothetical policy reasons why Congress may have intended such a result. Maj. Op. at 1064-65. But the majority’s view that Congress intended to penalize married co-owners by giving them half the deduction allowed to unmarried co-owners seems more absurd than the view that Congress may have intended to penalize married couples filing separately. After all, it is more reasonable to think that Congress wanted to encourage married couples to file jointly to avoid a statutory penalty than it is to think that Congress wanted to encourage taxpayers not to marry (or to get divorced) in order to avoid forfeiting half the deduction they could otherwise take. Given that reasonable jurists could point to either interpretation as absurd, the better solution is to defer to the IRS’s reasonable interpretation of the statute.
Finally, the majority discusses the practical difficulties that may arise if we did *1075 not allow unmarried co-owners each to deduct interest on up to $1.1 million of debt, such as the problem of determining how much interest each of multiple hypothetical co-owners may deduct. Maj. Op. at 1063-64. Following the IRS’s reasonable interpretation of how the statute works, each co-owner is entitled to deduct the interest payments that the co-owner actually paid, multiplied by a.fraction consisting of $1.1 million divided by the total aggregate debt secured by the co-owner’s qualified residence. So long as an individual co-owner knows the amount of interest the co-owner personally paid, and how much debt is secured by the qualified residence co-owned by that taxpayer, the co-owner can calculate the amount of deductible interest. If there are policy consequences of the plain language that Congress did not intend, Congress can amend the statute itself.
The majority concedes that the statute is “-anything but ‘plain’.” Maj. Op. at 1066. The IRS has provided a workable approach to Congress’s ambiguous statute that avoids many of the problems created by the majority’s opinion. Neither the majority nor Voss and Sophy offer arguments that would compel departing from this approach. I would affirm the tax court.

. 26 C.F.R. § 1.163-10T discusses “qualified residence interest” in 26 U.S.C. § 163(h)(3). § 1.163-10T(e) provides a formula to determine qualified residence interest when secured debt exceeds the adjusted purchase price of a house. The parties do not dispute that it is also the applicable formula for purposes of determining what proportion of interest payments is deductible when "the average balance of the debt” exceeds the "applicable debt limit.” 26 C.F.R. § 1.163-10T(e). The majority concedes that § 1.163-10T(e) applies in this context, Maj. Op. at 1054, 1057 n. 5, but argues that it "only addresses the situation of a single taxpayer,” Maj. Op. at 1064 n. 11. Nothing in the regulation supports the majority’s assertion, however; rather, the IRS has concluded that the regulation does apply to co-owners. See IRS CCA 200911007, 2009 WL 641772.

. Although the IRS does not deem Chief Counsel Advice letters to be precedential, courts cite these statements when they are helpful in light of an agency's expertise and established practice. See, e.g., Hall v. United States, - U.S. -, 132 S.Ct. 1882, 1890, 182 L.Ed.2d 840 (2012) (holding that there was “no reason to depart from those established understandings” contained in an IRS Chief Counsel Advice statement, its manual, and its litigation guidelines); see also Wells Fargo & Co. v. United States, 119 Fed Cl. 27, 37-38 (2014).

. The deductions Voss and Sophy claimed on their tax returns were much greater than the amount they now claim under their current interpretation of § 163(h).

. The majority claims that it is inconsistent to defer to the IRS's position regarding the deduction for unmarried co-owners while failing to defer to the IRS regarding the deduction for married individuals filing separately. Maj. Op. at 1067-68. But, as discussed below, the IRS has not expressed a position as to what deduction married individuals filing separately may claim. See infra note 5. As such, there is no interpretation to which we could defer regarding what the statute means for married individuals filing separately. By contrast, the IRS has offered a clear interpretation of the statute as it applies to unmarried co-owners. We should defer to that interpretation.

. The majority asserts that there is a clear consensus among tax courts and the IRS that a married couple filing separately may, in the aggregate, deduct interest on up to $1.1 million of qualifying debt. See Maj. Op. at 1059- *1074 60 n. 8, 1067-68. This is incorrect. While the sources cited by the majority correctly indicate that the debt limit in the statute is $550,000 for “each” married individual filing a separate return, none of these sources explains how the IRS would apply its formula to calculate the interest deduction for a married individual filing separately. Because the meaning of the marriage parenthetical is unclear, it does not undercut the IRS's unambiguous position that unmarried co-owners may not receive double the deduction of married co-owners.

. In other words, under the majority’s theory, spouses filing jointly who own a qualified residence encumbered with a $2.2 million loan could deduct one half of their total interest payments (based on dividing the $1.1 million debt limit by the $2.2 million debt). But if two unmarried taxpayers owned a qualified residence with the same $2.2 million loan, the taxpayers could deduct 100 percent of their interest payments because each taxpayer could treat $1.1 million as acquisition or home equity debt (i.e., based on the $1.1 million debt limit divided by each taxpayer’s "portion" of the debt, $1.1 million). Maj. Op. at 1058-59.